HARRIS, Judge.
Appellants, three businesses[1] spawned by Hobby Box, Inc., appeals prejudgment writs of replevin issued in favor of Associated Independent Distributors, Inc. (AID). The operative facts appear undisputed.
Barry Taylor was the moving force and primary owner of Hobby Box, Inc., the central force behind a hobby retail franchising operation. Taylor and his wife owned Hobby Box Marketing, Inc., the franchiser, and controlled H & B Group, Inc. which owned stock in and managed certain stores through a trust for Taylor’s children. Through these corporations Tay *1383 lor found locations for stores, developed some thirty-five stores and then sold part interest in some of the stores to outsiders.[2] Taylor, through Hobby Box, Inc., handled inventory and billing for appellants. Taylor had check signing power in all appellants’ operations.
AID was a toy and hobby distributor and supplied inventory to appellant through Hobby Box, Inc. Hobby Box, Inc. would buy in quantity and then “sell” to the franchise operations.
After approximately $700,000 in credit was extended to Hobby Box, Inc., AID required the franchise operations to execute individual security agreements pledging all inventory and non-inventory collateral to secure up to $30,000 each before additional credit would be made available. Taylor, on behalf of the various franchise operations including appellants, executed such security agreements. AID subsequently extended credit to $1,000,000; then to $3,000,000. Shipments were then stopped and a default occurred at $2,633,-827.08. This action ensued.
Appellants claim they are not responsible for the debt of Hobby Box, Inc. because:
1. They did not guarantee such debt;
2. They were not a debtor of AID under the security agreements because they owed no antecedent debt; and
3. Even if Taylor could bind them as a guarantor of Hobby Box, Inc.’s debts, such guarantee was not in writing and thus violated the Statute of Frauds.
After reviewing the record, we disagree and affirm the trial court.
There is sufficient evidence in the record to support the conclusion that Taylor was the president or managing agent[3] of Hobby Box, Inc. and all of the franchise store operations. Taylor on behalf of all such operations entered into a line of credit for all stores with AID. In order to better control inventory and to take advantage of economies that could be realized by centralized billing and shipping, Taylor directed that all merchandise be sent to the Hobby Box Distribution Center in Longwood, Florida and that all billing be in the name of Hobby Box, Inc. When the credit reached $700,000, in order to retain the merchandise sent out to the various stores as security for the increasing indebtedness, the individual stores executed such agreements, not as a guarantor of Hobby Box, Inc.’s debt, but to secure the continuing and increasing corporate[4] debt of the individual stores. Since the trial court could reasonably find from the evidence that credit was extended to the Hobby Box operation, such operation as a unit owed the debt. To hold otherwise would permit a colossal fraud to be perpetrated by the skillful manipulation of an organizational chart.
AFFIRMED.
DANIEL, C.J., and PETERSON, J., concur.

. Although the names of these businesses include the designation "Inc.", the trial judge found there was no believable evidence offered to prove that, in fact, they were independently incorporated. Each appellant represents an individual Hobby Box store.

.Although Taylor asserts some of the stores were sold outright to others, there is little evidence in the record to support this. There is no claim that any of appellants are wholly owned by outsiders.

. Appellants in their brief refer to Taylor as the "managing agent” for some 35 of the individual Hobby Box stores.

. Not referring to the legal status of incorporating but relating generally to a "unified body of individuals.”